IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-01930-WYD-MEH

WYATT T. HANDY, JR.,

    Plaintiff,

v.

TRACY DOUGLAS,
TAMERA COOPER,
GREG WILKINSON,
CAPTAIN FRANK, Shift Commander/Duty Officer,
BOBBY MAYES, and
SHERWYN PHILLIP,

    Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Michael E. Hegarty, United States Magistrate Judge**.

    Before the Court is the CDOC Defendants' (Mayes and Phillip) Motion to Dismiss Plaintiff's Third Amended Complaint [filed April 6, 2015; docket #74]. The motion has been referred to this Court for recommendation. (Docket #75.) The motion is fully briefed, and the Court finds that oral argument will not assist in the adjudication of the motion. Based upon the record herein and for the reasons that follow, the Court respectfully recommends that the CDOC Defendants' motion be **granted**.[1]

---

[1] Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States*

## BACKGROUND

Plaintiff, an incarcerated person proceeding *pro se*, initiated this lawsuit on July 10, 2014. In his original Complaint, Plaintiff alleged the named Defendants acted negligently and violated his First, Eighth and Fourteenth Amendment rights. Docket #1. During initial review, Magistrate Judge Boland ordered that Plaintiff file an amended complaint, in which the Plaintiff dropped his Fourteenth Amendment and negligent supervision claims. Docket #10. Judge Babcock then dismissed Plaintiff's claims against the Corrections Corporation of America, and the remaining claims against the individual Defendants proceeded. Before the time lapsed for the Defendants' answer or other response, the Court granted Plaintiff's request to file a Second Amended Complaint on October 7, 2014; the Second Amended Complaint was filed October 20, 2014 dropping the Eighth Amendment claims, but reinstating the negligent supervision claim and adding claims for negligent and intentional infliction of emotional distress. Docket #31.

Defendants Douglas, Reyman, Bonner and Wilkinson filed an Answer to the Second Amended Complaint on November 19, 2014. Docket #38. Two Defendants, Cooper and the "Unknown Shift Commander," were not served at the facility; accordingly, the Court granted Plaintiff additional time within which to serve these Defendants. Meanwhile, on December 18, 2014, this Court held a scheduling conference at which the Court set deadlines for discovery and dispositive motions in this case, including a deadline for joining parties and filing amended pleadings. Docket #43.

---

*v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *In re Garcia*, 347 F. App'x 381, 382-83 (10th Cir. 2009).

Just before the January 21, 2015 deadline for filing amended pleadings, the Plaintiff filed a motion to amend the Second Amended Complaint seeking to add claims against the CDOC Defendants, Mayes and Phillip, and a Fourteenth Amendment claim against all Defendants. Docket #45. The Court granted the motion as timely and "in the interest of justice." Docket #49.

**I.   Facts**

The following are factual allegations (as opposed to legal conclusions, bare assertions, or merely conclusory allegations) made by the Plaintiff against the CDOC Defendants in the operative Third Amended Complaint,[2] which are taken as true for analysis under Fed. R. Civ. P. 12(b)(6) pursuant to *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiff claims that on April 1, 2014, his case manager submitted a "routine reclass" on his behalf requesting a lateral move for a Therapeutic Community (TC) program, due to his high drug abuse score. The case manager explained that, due to Plaintiff's high score, the TC program was required for a drug and alcohol assessment. The TC program is a 12-month program, the completion for which offenders are entitled to earn up to 30 days of "achievement earned time" subtracted from their sentences.

On April 7, 2014, the CDOC authorized Plaintiff's move for substance abuse programming, and he was placed on a waiting list to be moved to the Arrowhead Correctional Center (ACC) for the TC program. On July 2, 2014, Plaintiff filed the present action against other Defendants, including Tracy Douglas. Then, on July 8, 2014, Douglas submitted a "discretionary reclass"

---

[2]The District Court recently adopted this Court's recommendation to allow Plaintiff to file a Fourth Amended Complaint adding a single Defendant to this case. Docket #127. The Court notes that Plaintiff's allegations concerning the CDOC Defendants are identical in the proposed new complaint, which has yet to be filed by the Plaintiff.

requesting that Plaintiff be moved to the Cheyenne Mountain Re-entry Center (CMRC), and Plaintiff was moved the following day. The CMRC does not operate the TC program or other program specializing in treating offenders with high drug abuse scores. In addition, while the ACC is a minimum security facility, the CMRC is a medium security facility, which provides fewer privileges and less freedom.

Plaintiff alleges that "Defendant Mayes recommended the move and Defendant Phillip authorized it." The move resulted in a "higher custody contrary to the scored custody of Plaintiff" and extended Plaintiff's next scheduled review date from February 19, 2015 to July 8, 2015 when he could be "routine reclassed" to a lesser security facility. Plaintiff contends that, had he been transferred to ACC on July 9, 2014, he would have had time to attend the TC program before his scheduled release date.

**II.     Procedural History**

The CDOC Defendants responded to the Third Amended Complaint by filing the present motion to dismiss Claims 6 (First Amendment retaliation) and 7 (Fourteenth Amendment due process) in which they are identified, arguing they, in their official capacities, are entitled to absolute immunity pursuant to the Eleventh Amendment; they, in their individual capacities, are entitled to qualified immunity; Plaintiff fails to allege personal participation as necessary under 42 U.S.C. § 1983; Plaintiff fails to state claims for retaliation and violations of due process; Plaintiff fails to state claims for compensatory and punitive damages; and Plaintiff's state law claims are barred by the Colorado Governmental Immunity Act ("CGIA").

Plaintiff concedes the Defendants' Eleventh Amendment argument, affirms that his state law claims are not raised against the CDOC Defendants, and confirms he is not seeking compensatory

damages against them, but counters that he states sufficient claims against, and personal participation by, the Defendants in their individual capacities and states a proper claim for punitive damages. The CDOC Defendants reply that Plaintiff may not present additional facts to support his claims in his response brief, and he is not entitled to select his prison facility or any particular program.

## LEGAL STANDARDS

### I.   Dismissal Pursuant to Fed. R. Civ. P. 12(b)(6)[3]

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id. Twombly* requires a two-prong analysis. First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.* at 678-80. Second, the Court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 680.

Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Khalik v. United Air Lines*, 671 F.3d

---

[3]Defendants relied on both Fed. R. Civ. P. 12(b)(6) and 12(b)(1) for their motion, but Plaintiff conceded the Defendants' jurisdictional argument, so the Court will proceed to analyze Defendants' remaining arguments under Rule 12(b)(6).

1188, 1191 (10th Cir. 2012) (quoting *Robbins v. Okla.*, 519 F.3d 1242, 1247 (10th Cir. 2008)). "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011). Thus, while the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in a complaint, the elements of each alleged cause of action may help to determine whether the plaintiff has set forth a plausible claim. *Khalik*, 671 F.3d at 1191.

However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. The complaint must provide "more than labels and conclusions" or merely "a formulaic recitation of the elements of a cause of action," so that "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has made an allegation, "but it has not shown that the pleader is entitled to relief." *Id.* (quotation marks and citation omitted).

## II.   Treatment of a Pro Se Plaintiff's Complaint

A federal court must construe a *pro se* plaintiff's "pleadings liberally, applying a less stringent standard than is applicable to pleadings filed by lawyers. [The] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (quotations and citations omitted). The Tenth Circuit interpreted this rule to mean, "if the court can reasonably

read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, this interpretation is qualified in that it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Id.*; *see also Peterson v. Shanks*, 149 F.3d 1140, 1143 (10th Cir. 1998) ("we will not supply additional facts, nor will we construct a legal theory for plaintiff that assumes facts that have not been pleaded") (quoting *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989)).

## ANALYSIS

The issues remaining after full briefing of the present motion are whether the CDOC Defendants are entitled to qualified immunity from Plaintiff's First and Fourteenth Amendment claims and, if not, whether Plaintiff has stated a plausible claim for punitive damages. The Court will address these issues in turn.

**I.       Qualified Immunity for Individual Claims**

The CDOC Defendants assert they are entitled to qualified immunity on Plaintiff's First and Fourteenth Amendment claims against them in their individual capacities. Qualified immunity protects from litigation a public official whose possible violation of a plaintiff's civil rights was not clearly a violation at the time of the official's actions. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "It is an entitlement not to stand trial or face the other burdens of litigation." *Ahmad v. Furlong*, 435 F.3d 1196, 1198 (10th Cir. 2006) (internal quotations and citations omitted). "The privilege is an immunity from suit rather than a mere defense to liability." *Id.*

Qualified immunity is designed to shield public officials and ensure "that erroneous suits

do not even go to trial." *Hinton v. City of Elwood, Kan.*, 997 F.2d 774, 779 (10th Cir. 1993) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985); *Harlow*, 457 U.S. at 806-08 (1982); *Pueblo Neighborhood Health Ctrs. v. Losavio*, 847 F.2d 642, 645 (10th Cir. 1988)). Consequently, courts should address the qualified immunity defense at the earliest possible stage in litigation. *Medina v. Cram*, 252 F.3d 1124, 1127-28 (10th Cir. 2001); *Albright v. Rodriguez*, 51 F.3d 1531, 1534 (10th Cir. 1995).

When a defendant asserts the defense of qualified immunity, the burden shifts to the plaintiff to overcome the asserted immunity. *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009). "The plaintiff must demonstrate on the facts alleged both that the defendant violated his constitutional or statutory rights, and that the right was clearly established at the time of the alleged unlawful activity." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 818 (2009)).

The Supreme Court has discarded a review process that required courts to examine these questions sequentially, first considering whether a right had been violated, and then second – if the court concluded a right had been violated – whether that right was clearly established at the time of the alleged violation. *Pearson*, 555 U.S. at 232-35. *Pearson* instead affords courts the discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 236; *see also Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1277 (10th Cir. 2009).

Here, for Plaintiff's First and Fourteenth Amendment claims against the CDOC Defendants, the Court examines first whether Plaintiff has demonstrated on the alleged facts that Mayes and/or Phillip violated his constitutional rights against retaliation and violations of due process. If the Court finds that Plaintiff's facts state plausible violations of a right, the Court will then proceed to

analyze whether Plaintiff's constitutional right was clearly established at the time of the alleged conduct.

To establish a violation, the Plaintiff must sufficiently allege that (1) Mayes and/or Phillip personally participated in the challenged actions, and (2) Mayes and/or Phillip retaliated against Plaintiff for filing this lawsuit, or (3) Mayes and/or Phillip violated Plaintiff's due process rights.

A.     Personal Participation

"Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation." *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997). Thus, there must be an affirmative link between actions taken by a defendant and any plan or policy put into effect that violates a plaintiff's constitutional rights. *Dodds v. Richardson*, 614 F.3d 1185, 1200-01 (10th Cir. 2010). The Tenth Circuit has noted that in a civil rights case asserting claims against individual government actors, "it is particularly important ... that the complaint make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations" against an entire group of defendants. *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011).

Supervisory status alone does not create § 1983 liability. *Duffield v. Jackson,* 545 F.3d 1234, 1239 (10th Cir. 2008). Rather, liability of a supervisor under § 1983 requires "allegations of personal direction or of actual knowledge and acquiescence." *Langley v. Adams Cnty., Colo.*, 987 F.2d 1473, 1481 (10th Cir. 1993) (cited with approval in *Green v. Branson*, 108 F.3d 1296, 1303 (10th Cir. 1997)). Thus, there must be "an affirmative link ... between the constitutional deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise." *Green,* 108 F.3d at 1302 (quotation and brackets omitted). In other words, the

Section 1983 liability is properly imposed "upon individual defendants who act with the requisite degree of culpability to promulgate, create, implement, or otherwise possess responsibility for the continued operation of policies that cause the deprivation of persons' federally protected rights." *Dodds*, 614 F.3d at 1201.

Personal participation is an essential allegation in a civil rights action. *See Bennett v. Passic,* 545 F.2d 1260, 1262-63 (10th Cir. 1976). To establish personal participation, Plaintiff must show that each Defendant caused the deprivation of a federal right. *See Kentucky v. Graham,* 473 U.S. 159, 166 (1985).

Here, Mayes and Phillip argue the Plaintiff has failed to allege their knowledge of the recommendation to move him to ACC as opposed to CMRC, of Plaintiff's history of drug use and alleged need to engage in the TC program at ACC, and of Plaintiff's previous grievance or lawsuit against Defendant Douglas. Plaintiff counters that Mayes and Phillip knew about the recommended move to ACC for the TC program because, as classification specialists at the CDOC Offender Services, they authorized the move and are "charged with authority to assign and transfer offenders" within the CDOC system. Response, docket #107 at 3 ("Defendants Mayes and Phillip are classification specialist[s] who comprise the operational central classification unit of the Office of Offender Services."). Mayes and Phillip reply that it is improper for the Plaintiff to allege new facts in his response brief.

The Court disagrees with Defendants and finds that Plaintiff's argument, while providing additional information, simply clarifies his allegations regarding Mayes and Phillip rather than adds new facts. This Court recommends the District Court find Plaintiff's allegations that Mayes recommended the transfer to the CMRC and Phillip authorized it, both having known about and

10

authorized the prior recommendation to transfer Plaintiff to the ACC, suffice to plausibly state the Defendants' personal participation in the challenged action.

        B.        First Amendment Claim

"It is well-settled that prison officials may not retaliate against or harass an inmate because of the inmate's exercise of his right of access to the courts." *Gee v. Pacheco*, 627 F.3d 1178, 1189 (10th Cir. 2010) (citation, brackets and internal quotation marks omitted); *see also Williams v. Meese*, 926 F.2d 994, 998 (10th Cir. 1991) (holding officials may not retaliate against prisoners for filing administrative grievances). To establish a retaliation claim, the Plaintiff must show: (1) that he was engaged in constitutionally protected activity; (2) that Defendants' action caused him to suffer an injury that "would chill a person of ordinary firmness from continuing to engage in that activity;" and (3) that Defendants' adverse action was substantially motivated as a response to Plaintiff's exercise of constitutionally protected conduct. *See Shero v. City of Grove, Okl.*, 510 F.3d 1196, 1203 (10th Cir.2007); *see also Gee*, 627 F.3d at 1189 (applying same test to prisoner claims under 42 U.S.C. § 1983).

Even assuming the Plaintiff engaged in protected activity and that Mayes and Phillip participated in the challenged transfer to the CMRC, which "would chill a person of ordinary firmness from continuing to engage in that activity" (*see Rogers v. Garcia*, No. 08-cv-02821-WYD, 2010 WL 3547432, at *5 (D. Colo. Sept. 3, 2010) (unpublished) ("it is clearly established that prison officials cannot retaliate against a person to prevent them from exercising their right to file grievances or lawsuits, i.e., that the prison officials are chilling the inmate's First Amendment rights.")), the Plaintiff has failed to allege Mayes and Phillip were substantially motivated to transfer him as a response to his filing a grievance or this lawsuit.

11

The "substantial motivation" element requires that Defendants' actions be substantially motivated by retaliation for Plaintiff's engaging in the protected activity. Plaintiff must show that Defendants' retaliatory motive was a "but for" cause of Defendants' actions. *Smith v. Maschner*, 899 F.2d 940, 949-50 (10th Cir. 1990). In *Gee*, the Tenth Circuit found the plaintiff had sufficiently stated facts that the challenged action was "substantially motivated" by the plaintiff's protected activity where he alleged the defendants were aware of his protected activity, his protected activity complained of the defendants' actions, and the facility transfer was in close temporal proximity to the protected activity. 627 F.3d at 1189.

Here, Plaintiff's allegations are that he filed this lawsuit on July 2, 2014 and was transferred to the CMRC on July 9, 2014, and that Mayes and Phillip recommended and authorized the transfer sometime on or before July 9, 2014. Defendants contend that nothing in the operative complaint alleges they were aware of Plaintiff's lawsuit. Plaintiff counters that, before filing the lawsuit, he filed several grievances between February 28, 2014 and April 23, 2014 concerning Defendant Douglas' placing him in disciplinary segregation, and filed a written "Statutory Notice of Intent Pursuant to C.R.S. § 24-10-109" concerning the "segregation incident" on June 16, 2014; apparently, Plaintiff's chronology serves to support an argument that Defendants were or should have been aware of his protected activity.

However, Plaintiff's Third Amended Complaint and concessions made in his response brief belie his argument. Nothing in the complaint alleges Phillip or Mayes had any participation in, much less knowledge of, the "segregation incident" or any grievances or notices filed as a result of the incident. Moreover, neither Mayes nor Phillip were named in this lawsuit until January 23, 2015, well after the transfer occurred (in fact, the waiver of service of the Third Amended Complaint

12

was not filed until February 4, 2015). Further, Plaintiff concedes that his state law claims are not raised against Mayes and Phillip; accordingly, the Notice of Intent filed in June 2014 has no effect here. Thus, Plaintiff has failed to allege Mayes and Phillip "were aware of his protected activity," which "complained of [Mayes' and Phillip's] actions."

Consequently, this Court recommends that the District Court find Plaintiff has failed to state a First Amendment claim against Mayes and Phillip and, thus, these Defendants are entitled to qualified immunity.

C.    Fourteenth Amendment Claim

The Due Process Clause of the Fourteenth Amendment does not protect every change in the conditions of confinement "having a substantial adverse impact" on a prisoner. *Meachum v. Fano*, 427 U.S. 215, 224 (1976). Rather, "[t]he Due Process Clause applies when government action deprives a person of liberty or property; accordingly, when there is a claimed denial of due process we have inquired into the nature of the individual's claimed interest." *Greenholtz v. Inmates of Ne. Penal & Correctional Complex*, 442 U.S. 1, 7 (1979). Protected liberty interests must rise to more than an abstract need or desire, and must be based on more than a unilateral hope; thus, an individual claiming a protected interest must have a legitimate claim of entitlement to it. *Id.* (citation omitted).

The threshold question here is whether the Defendants' actions impacted a constitutionally-protected interest. In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Supreme Court held that prison conditions do not impact a protectable liberty interest unless they result in an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 483. Relevant factors to consider when determining whether conditions of confinement implicate a protected liberty interest include: (1) whether the conditions relate to and further a legitimate

13

penological interest, such as safety or rehabilitation; (2) whether the conditions of placement are extreme; (3) whether the placement increases the duration of confinement; and (4) whether the placement is indeterminate. *See Rezaq v. Nalley*, 677 F.3d 1001, 1012 (10th Cir. 2012). "[A]ny assessment must be mindful of the primary management role of prison officials who should be free from second-guessing or micro-management from the federal courts." *Estate of DiMarco v. Wyo. Dep't of Corrs., Div. of Prisons*, 473 F.3d 1334, 1342 (10th Cir. 2007).

Thus, the Due Process Clause does not create an inherent liberty interest guaranteeing housing in a particular penal institution or providing protection against transfer from one institution to another. *See Meachum*, 427 U.S. at 228-29; *see also Treadwell v. Holt*, 42 F. App'x 86, 88 (10th Cir. 2002). To show that his transfer to the CMRC resulted in the deprivation of a liberty interest, the Plaintiff must plead facts showing that the transfer created conditions of confinement that are "atypical and significant hardships" compared to ordinary prison life. *Sandin*, 515 U.S. at 483.

First, the Court agrees with two other courts in this District that found prisoner plaintiffs do not possess protected liberty interests in participating in the TC program. *See Grady v. Garcia*, No. 10-cv-00347-PAB, 2012 WL 1044491, at *8 (D. Colo. Mar. 27, 2012); *Cooper v. Ducharme*, No. 13-cv-01154-KMT, 2015 WL 1064180, at *10 (D. Colo. Mar. 9, 2015). "Federal courts have consistently found that prisoners have no constitutionally protected liberty interest in prison vocational, rehabilitation, and educational programs based on the Fourteenth Amendment." *Washington v. Borejon*, 324 F. App'x 741, 741 (10th Cir. 2009) ("The ability to participate in a rehabilitative prison program clearly does not implicate life or property interests."). Thus, any claims by the Plaintiff that Defendants prevented him from participating in the program itself are insufficient.

To the extent that the Plaintiff alleges his transfer to the CMRC "increased the duration of [his] confinement" by being deprived of the ability to earn "days subtracted from his sentence," the claim fails. While "[i]nmates must be afforded due process before their good time credits can be *revoked*," *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974) (emphasis added), Colorado law does not furnish a right to *earn* good-time credits and expressly permits the denial of such a right. *See Cooper*, 2015 WL 1064180 at *10 (citing Colo Rev. Stat. § 17-22.5-301(4) ("[n]othing in this section shall be so construed as to prevent the department from withholding good time earnable in subsequent periods of sentence, but not yet earned, for conduct occurring in a given period of sentence.")); *see also Fogle v. Pierson*, 435 F.3d 1252, 1262 (10th Cir. 2006) (applying Colo. Rev. Stat. § 17-22.5-302(1)); *Anderson v. Cunningham*, 319 F. App'x 706, 710 (10th Cir. 2009) ("Because under Colorado law good time credits are discretionary, [plaintiff] does not have a protected interest in earning good time credits") (internal quotation marks and citation omitted).

As to whether the conditions of Plaintiff's transfer to the CMRC were "extreme," Plaintiff alleges that the CMRC is a higher security prison than his custody score required and provided fewer privileges and less freedom. However, "[t]he Due Process Clause itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement." *Toevs v. Reid*, 685 F.3d 903, 911 (10th Cir. 2011) (internal quotation marks and citation omitted). Plaintiff does not further describe the conditions at the CMRC and, thus, his claim fails.

Finally, as to whether Plaintiff's placement at the CMRC was "indeterminate," the Plaintiff is silent. However, the docket in this case reflects that Plaintiff filed notices of change of address on April 8, 2015 (docket #77) and April 20, 2015 (docket #88); he currently resides at the Trinidad Correctional Facility.

15

Therefore, as Plaintiff fails to allege a protected liberty interest to support his Fourteenth Amendment claims against Mayes and Phillip, the Court recommends that the District Court find Mayes and Phillip are entitled to qualified immunity and dismiss these claims.

## II.     Punitive Damages Claim

In light of this Court's findings that the Plaintiff fails to state claims for relief against the CDOC Defendants, it need not address whether Plaintiff has stated plausible claims for punitive damages against them.

## III.    Leave to Amend

Dismissal of a case under Fed. R. Civ. P. 12(b)(6) is "a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Cayman Exploration Corp. v. United Gas Pipe Line*, 873 F.2d 1357, 1359 (10th Cir. 1989) (quoting *Morgan v. City of Rawlins*, 792 F.2d 975, 978 (10th Cir. 1986)). As such, in this jurisdiction, a court typically does not dismiss a claim under Fed. R. Civ. P. 12(b)(6) until the plaintiff has been provided notice and an opportunity to amend the complaint to cure the defective allegations. *See Bellmon,* 935 F.2d at 1109-10. The Court may only dismiss "*sua sponte* when it is patently obvious that the plaintiff could not prevail on the facts alleged, and allowing [them] to amend [their] complaint would be futile." *Id.* (quoting *McKinney v. Oklahoma,* 925 F.2d 363, 365 (10th Cir. 1991)). Here, the Plaintiff has previously amended his pleading several times and filed his most recent motion to amend after the CDOC Defendants filed the present motion. Moreover, the Plaintiff mentions nothing in his response brief that demonstrates he may be able to cure the pleading deficiencies identified here for his First and Fourteenth Amendment claims against Defendants Mayes and Phillip. Accordingly, the Court recommends that Plaintiff be denied leave

16

to file a *fifth* amended complaint against these Defendants.

## **CONCLUSION**

In sum, the Court finds that Plaintiff has failed to state a plausible claims under the First and Fourteenth Amendments against Defendants Mayes and Phillip in their individual capacities in this case. Moreover, because Plaintiff has had several opportunities to amend his complaint, the Court recommends denying Plaintiff leave to amend his Fourth Amended Complaint.

Accordingly, based upon the foregoing and the entire record herein, this Court respectfully RECOMMENDS that the CDOC Defendants' (Mayes and Phillip) Motion to Dismiss Plaintiff's Third Amended Complaint [filed April 6, 2015; docket #74] be **GRANTED**.

Entered and dated at Denver, Colorado, this 19th day of June, 2015.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge