IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-01930-WYD-MEH

WYATT T. HANDY, JR.,

      Plaintiff,

v.

TRACY DOUGLAS,
TAMERA COOPER,
GREG WILKINSON,
CAPTAIN FRANK, Shift Commander/Duty Officer,
BOBBY MAYES,
SHERWYN PHILLIP, and
TIFFANY DAVIS,

      Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Michael E. Hegarty, United States Magistrate Judge**.

      Before the Court is a Motion for Summary Judgment from CCA Defendants [identified as Douglas, Wilkinson, and Frank] [filed August 31, 2015; docket #184]. Pursuant to 28 U.S.C. § 636(b)(1)(B) and D.C. Colo. LCivR 72.1C, the matter was referred to this Court for recommendation [docket #185]. The motion is fully briefed, and oral argument would not materially assist the Court in its adjudication of the motion. For the reasons that follow, the Court respectfully recommends that Defendant's motion for summary judgment be granted in part and denied in part.[1]

---

[1] Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo

## BACKGROUND

Plaintiff, an incarcerated person proceeding *pro se*, initiated this lawsuit on July 10, 2014 pursuant to 42 U.S.C. § 1983.

### I.     Procedural History

In his original complaint, Plaintiff alleged generally that Defendants acted negligently and violated his First, Eighth and Fourteenth Amendment rights.  Docket #1.   During initial review, Magistrate Judge Boland ordered that Plaintiff file an amended complaint, which the Plaintiff did, dropping his Fourteenth Amendment and negligent supervision claims.  Docket #10.  Senior Judge Babcock then dismissed Plaintiff's claims against the Corrections Corporation of America, allowing the remaining claims against the individual Defendants (Douglas, Reyman, Bonner and Wilkinson, then referenced as "CCA Defendants") to proceed.  Before the time lapsed for the CCA Defendants' answer or other response, the Court granted Plaintiff's request to file a Second Amended Complaint on October 7, 2014; the Second Amended Complaint was filed October 20, 2014 dropping the Eighth Amendment claims, but reinstating the negligent supervision claim and adding claims for negligent and intentional infliction of emotional distress. Docket #31. The CCA Defendants filed an Answer to the Second Amended Complaint on November 19, 2014.  Docket #38.  Two other Defendants, Cooper and the "Unknown Shift Commander," were not served at the facility; accordingly, the Court granted Plaintiff additional time within which to serve these Defendants.

---

determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1).  Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual and legal findings of the Magistrate Judge that are accepted or adopted by the District Court. *Duffield v. Jackson*, 545 F.3d 1234, 1237 (10th Cir. 2008) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir.1991)).

Meanwhile, on December 18, 2014, this Court held a scheduling conference at which the Court set deadlines for discovery and dispositive motions in this case, including a deadline for joining parties and filing amended pleadings.  Docket #43.

Just before the deadline, Plaintiff sought and was granted leave to file a Third Amended Complaint adding Defendants Mayes and Philip ("CDOC Defendants") as Defendants to his First and Fourteenth Amendment claims.  Docket #50.  On April 6, 2015, the CDOC Defendants responded to the Third Amended Complaint by filing a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  *See* docket #80.  This Court issued a Report and Recommendation on June 19, 2015 that the CDOC Defendants' motion be granted, and that report remains pending.  Docket #138.

Meanwhile, on June 15, 2015, Senior Judge Wiley Y. Daniel issued an order adopting this Court's recommendation that the Second Amended Complaint be dismissed, but Plaintiff be granted leave to file an amended pleading; Judge Daniel ordered Plaintiff to file a "Third Amended Complaint" within 14 days of the order.  Docket #127.  However, Judge Daniel modified that order on July 2, 2015 to permit Plaintiff to file a *Fourth* Amended Complaint adding Tiffany Davis as a CCA Defendant.  Docket #150.  The Fourth Amended Complaint is the operative pleading in this matter, identifying Defendants Douglas, Wilkinson, Frank, and Davis as the "CCA Defendants" and Defendants Mayes and Phillip as the "CDOC Defendants," asserting claims against these Defendants in their individual and official capacities, and alleging claims for First Amendment retaliation, Fourteenth Amendment due process violations, negligence, negligent and intentional infliction of emotional distress, and negligent supervision.  Docket #151.

Discovery involving the CCA Defendants[2] proceeded from December 2014 through July 2015, and on the dispositive motions deadline, August 31, 2015, CCA Defendants Douglas, Wilkinson, and Frank[3] filed the present motion for summary judgment.  Docket #184.  They argue the Plaintiff fails to demonstrate genuine issues of material fact as to their participation in the alleged injury – revocation of an order of transfer to Plaintiff's desired facility – and contend that Plaintiff's allegations do not rise to the level of constitutional claims.  Further, the CCA Defendants assert the Plaintiff fails to state claims for municipal liability to the extent he seeks recovery from the Defendants in their official capacities, fails to state substantive due process claims, fails to demonstrate he exhausted his administrative remedies required by the Prison Litigation Reform Act ("PLRA"), and fails to state a state law claim for negligence.

Plaintiff counters that his conduct in filing grievances and informing prison facility staff of his intent to file grievances was constitutionally protected activity; Douglas' claim that she was concerned for her safety around Plaintiff was a pretext to place Plaintiff in punitive segregation in retaliation for his protected activity; Douglas had never expressed a safety concern before the February 10, 2014 incident; and Douglas and Davis facilitated the override and transfer of Plaintiff to a higher custody facility to punish him for filing grievances and complaints.  Plaintiff argues that he demonstrates genuine issues of fact concerning his First Amendment, Fourteenth Amendment, and official capacity claims, and that he has properly exhausted the administrative remedies available to him.

---

[2]Discovery concerning the CDOC Defendants was stayed pending final resolution of their motion to dismiss.  Docket #111.

[3]Although the CCA Defendants include Defendant Tiffany Davis (*see, e.g.,* dockets ## 155, 212 at 1-2), she is not listed as having filed the present motion.

4

II.      **Findings of Fact**

The Court makes the following findings of fact viewed in the light most favorable to the Plaintiff, who is the non-moving party in this matter.

1.       Plaintiff was incarcerated at Kit Carson Correctional Facility ("KCCF") from November 2013 through July 2014.[4]

2.       Plaintiff arrived at KCCF on November 25, 2013 and was placed in segregation pending assignment.

3.       The following day, Plaintiff asked for an informal grievance form based on his placement in segregation (State of Colorado "Chronlog Report," at 27, 11/26/13 entry, docket #184-2), but he did not file the grievance form.

4.       Plaintiff was placed on Defendant Douglas' caseload on December 11, 2013. *Id.* at 26, 12/11/13 entry.

5.       After Plaintiff filed at least six grievances between December 4 and December 16, 2013 (dockets ## 212-3 through 212-9), Tamera Cooper held a meeting on December 18, 2013 with Plaintiff, Douglas, "Inv[estigator] Jones," and "CM Wagner" to discuss "the amount of informals and formal grievances [Plaintiff] was submitting."  *Id.* at 25, 12/18/13 entry.

6.       During the meeting, Plaintiff felt intimidated and nervous; Douglas told Plaintiff to stop filing grievances.  Declaration of Wyatt T. Handy Jr., November 1, 2015 ("Handy Declaration"), ¶¶ 3, 4, docket # 212-1.

7.       Cooper noted that Plaintiff was "very uncooperative and says he will do what he wants." "Chronlog Report," at 25, 12/18/13 entry, docket #184-2.

_____

[4]The Findings of Facts are stipulated by the parties unless otherwise noted.

8.      On this same date, Plaintiff signed five informal resolution forms, and Douglas gave Plaintiff five step one grievance forms related to the informal resolutions.  *Id.*

9.      Plaintiff continued to file grievance forms throughout January and early February 2014.

10.     On January 22, 2014, Douglas informed Plaintiff of the CDOC's decision denying his request for reclassification [transfer] to the Cheyenne Mountain Re-Entry Center ("CMRC") because of the requirement he remain in a medium security facility for six months prior to transfer to a minimum security facility.  *Id.* at 23, 1/22/14 entry.

11.     Plaintiff believes, according to AR 600-01(IV)(B), that both KCCF and CMRC are medium security facilities and, thus, he should have been eligible to transfer laterally to CMRC.  *See* CDOC Administrative Regulation ("AR") 600-01, docket #212-11.

12.     Plaintiff asked for and received a number of grievance forms on January 22, 2014.

13.     On January 30, 2014, February 4, 2014, and February 10, 2014, Plaintiff filed grievances against Douglas regarding the reclassification issue and his alleged "deprivation" of his good time and earned time credits.  Grievance Forms, docket #212-22.

14.     On February 10, 2014, Douglas received a kite from Plaintiff that she perceived to be "threatening and aggressive in tone."  Chronlog Report at 23, 2/10/14 entry.  Douglas noted that Plaintiff "STILL blames [her] and Ms. Reyman for him not getting into CMRC even though DOC made the final decision."  *Id.*  Douglas also noted that Plaintiff "makes [her] uneasy and [she was] starting to get concerned for [her] safety."  *Id.*

15.     The handwritten kite, addressed to Douglas and dated February 7, 2014, provides:

> It do [sic] not make sense to me how first of all, you can't get me in a re-entry program, but you can get me in TC, a program that I've already completed, which is a total waste of my time, when I can be doing programs that I have not done, but do whatever you [sic] gonna do! Send me wherever you send me. I'm down to play

your game! But I'm going to laugh last! I'm going to sue you for denying me my good time, earned time & programs; I'm going to sue you for playing games with my freedom & my life; when I'm done I'm going to make sure you do not manage anybody else's case ever again. I do not need TC! I've already done and completed TC! TC is not going to benefit me anymore than it already did! But whatever! Let's go!

CCA Inmate Request, February 7, 2014, docket #212-14.

16.     On February 10, 2014, Plaintiff was placed in segregation pending an investigation into the alleged threats.  Chronlog Report at 23, 2/10/14 entry.

17.     On February 11, 2014, a temporary case manager, CM Wagner, visited Plaintiff in segregation; Plaintiff told her that it made no difference who his case manager was,  he was entitled to good and earned time not received, he had unmet reentry programming needs, and he would sue Wagner "along with everyone else involved" if she did not grant his requests.  *Id.* at 22, 2/11/14 entry.

18.     On February 11, 2014, Plaintiff informed  Lt. Anderson of the Private Prisons Management Unit ("PPMU") of "what happened."   Handy Declaration, ¶ 12.  Plaintiff was released from segregation the following day and the charge was dropped.  *Id.*

19.     Following Plaintiff's release from segregation, Plaintiff "went back to normal operations ... doing my time or whatever," including filing additional grievances. Deposition of Wyatt T. Handy Jr., May 22, 2015 ("Handy depo."), 13:10-20.[5]

20.     Plaintiff was never sent to segregation again while at KCCF.

21.     Plaintiff continued to file grievances throughout the remainder of his time at KCCF.

---

[5]Although Defendants assert additional statements of fact based on Plaintiff's deposition testimony, they attached only pages 9, 13, 14, 20, and 21 of the deposition transcript to the motion. *See* docket #184-1.

22.     Plaintiff filed grievances regarding his placement in segregation, including an "informal resolution form" on February 10, 2014 (docket #212-23 at 7), a "step 1" grievance form on February 28, 2014 (docket #212-23 at 8), a "step 2" grievance form on March 28, 2014 (docket #212-23 at 9), and a "step 3" grievance form on April 23, 2014 (docket #212-23 at 10).  Plaintiff's narratives in the step 1-3 forms were substantially similar in that they all mentioned the content of the kite sent to Douglas and Plaintiff's motivation for stating his intent to sue Douglas.  *See id.*

23.     Tamera Cooper responded to the step 1 grievance and Defendant Wilkinson responded to the step 2 grievance essentially asserting that policies and procedures were followed regarding Plaintiff's placement in segregation.  *Id.*

24.     The CDOC Grievance Officer responded to the step 3 grievance finding Plaintiff improperly "articulated a number of issues [programming, good time, earned time, and staff conduct] and only one issue is allowed per grievance."  May 21, 2014 Letter from Anthony DeCesaro to Plaintiff, docket #212-23 at 11.  Accordingly, the officer concluded Plaintiff did not exhaust his administrative remedies.  *Id.*

25.     Plaintiff was never asked by any KCCF staff member to cure the procedural deficiencies in his grievances and to resubmit for processing.  Handy Declaration, ¶ 14.

26.     An "Inmate Reclassification Custody Rating" form dated February 19, 2014 reflects the scoring of Plaintiff's custody level at KCCF.  Docket #212-13.  Defendant Davis is listed as Plaintiff's case manager who scored him at a "minimum restrictive" level and, on April 1, 2014, she recommended that Plaintiff's custody level be changed from "medium" to "minimum restrictive." *Id.*  She also requested a "lateral move for TC [substance abuse] programming."  *Id.*  The recommendation was approved by Barbara Reyman that same day.  *Id.*

27.     On April 7, 2014, the CDOC issued an Executive Assignment Order authorizing a transfer of the Plaintiff from KCCF to Arrowhead Correctional Center ("ACC").  Docket #212-25 at 11.  The custody designation listed on this order for the Plaintiff was "medium."  *Id.*

28.     An "Inmate Reclassification Custody Rating" form dated July 8, 2014 reflects the scoring of Plaintiff's custody level at CMRC.  Docket #212-25 at 22.  Patricia Guerrero-Diaz is listed as Plaintiff's case manager who scored him at a "minimum restrictive" level and recommended that Plaintiff's custody level be set at "minimum restrictive."  *Id.*  She also noted "Discretionary reclass, request movement consideration to CMRC per Bobby Mayes."  *Id.*  The recommendation was approved by Tracy Douglas that same day.  *Id.*

29.     On July 8, 2014, the CDOC issued an Executive Assignment Order authorizing a transfer of the Plaintiff from KCCF to CRMC.  Docket #212-25 at 23.  The custody designation listed on this order for the Plaintiff was "medium" and a "comment" states "for CMRC pre-release program per offender services."  *Id.*

## LEGAL STANDARDS

### I.     Treatment of a *Pro Se* Plaintiff's Complaint

A federal court must construe a *pro se* plaintiff's "pleadings liberally, applying a less stringent standard than is applicable to pleadings filed by lawyers. [The] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (quotations and citations omitted).  The Tenth Circuit interpreted this rule to mean, "if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor

syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  However, this interpretation is qualified in that it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Id.*; *see also Peterson v. Shanks*, 149 F.3d 1140, 1143 (10th Cir. 1998) (citing *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989)).

## II.   Dismissal under Fed. R. Civ. P. 56

A motion for summary judgment serves the purpose of testing whether a trial is required. *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1185 (10th Cir. 2003).  The Court shall grant summary judgment if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  A fact is material if it might affect the outcome of the suit under the governing substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The moving party bears the initial responsibility of providing to the Court the factual basis for its motion.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "The moving party may carry its initial burden either by producing affirmative evidence negating an essential element of the nonmoving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial."  *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002).  Only admissible evidence may be considered when ruling on a motion for summary judgment.  *World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985).

The non-moving party has the burden of showing there are issues of material fact to be determined.  *Celotex*, 477 U.S. at 322.  That is, if the movant properly supports a motion for

summary judgment, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing a genuine factual issue for trial. Fed. R. Civ. P. 56(e); *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("[t]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.") (emphasis in original) (citation omitted); *see also Hysten v. Burlington Northern & Santa Fe Ry.*, 296 F.3d 1177, 1180 (10th Cir. 2002). These specific facts may be shown "'by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves.'" *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1008 (10th Cir. 1998) (quoting *Celotex*, 477 U.S. at 324). "[T]he content of summary judgment evidence must be generally admissible and . . . if that evidence is presented in the form of an affidavit, the Rules of Civil Procedure specifically require a certain type of admissibility, *i.e.*, the evidence must be based on personal knowledge." *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005). "The court views the record and draws all inferences in the light most favorable to the non-moving party." *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. Pepsico, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005).

## ANALYSIS

The CCA Defendants argue that Plaintiff has demonstrated no genuine factual issue as to whether he (1) failed to exhaust his administrative remedies; (2) establishes violations of the First and Fourteenth Amendments; (3) states proper official capacity constitutional claims; and (4) states proper negligence claims. The Court will address each contention in turn.

## I.     Exhaustion of Administrative Remedies

The Prison Litigation Reform Act ("PLRA") requires a prisoner to exhaust any available

administrative remedies before challenging prison conditions in federal court.  Prison Litigation

Reform Act, 42 U.S.C. § 1997e(a) (1996).  The administrative remedies provision of the PLRA

states:

> No action shall be brought with respect to prison conditions under section
> 1983 of this title, or any other Federal law, by a prisoner confined in any
> jail, prison, or other correctional facility until such administrative remedies
> as are available are exhausted.

§ 42 U.S.C. 1997e(a). At one time, exhaustion was left to the discretion of the district court;

however, it has since become mandatory.  *Woodford v. Ngo*, 548 U.S. 81, 85 (2006).  "Prisoners

must now exhaust all 'available' remedies, not just those that meet federal standards."  *Id.*

"Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the

exercise of their responsibilities before being haled into court."  *Jones v. Bock*, 549 U.S. 199, 204

(2007).  The purpose of proper exhaustion is to reduce the number of inmate suits, and also to

improve the quality of suits that are filed by producing a useful administrative record.  *Id.* (quoting

*Woodford*, 548 U.S. at 94-95).

Accordingly, the Supreme Court has determined "exhaustion is mandatory under the PLRA"

and "unexhausted claims cannot be brought in court."  *Jones*, 549 U.S. at 204.  The exhaustion of

administrative remedies need not be pleaded in the complaint but must be raised as an affirmative

defense.  *Id.*  The rules governing the process for fulfilling the administrative remedy obligation are

not articulated by the PLRA but are defined by the respective prison grievance process.  *Id*. at 205.

In order to "properly exhaust" in satisfaction of the PLRA requirement, the plaintiff prisoner must

comply with all prison grievance procedures.  *Id.*; *see also Woodford*, 548 U.S. at 90-91 (finding that

the PLRA exhaustion requirement "demands compliance with an agency's deadlines and other

critical procedural rules").  Therefore, according to *Jones*, claims that have not progressed through

the prison grievance process may not be brought in court.

The CDOC maintains a written grievance procedure that includes three levels of appeal for its inmates. *See* AR 850-04, docket #212-24. After the three levels of appeal have been properly exhausted, the grievance officer is responsible for notifying the "offender" that he or she has exhausted his or her administrative remedies. *Id.* (IV)(G)(1)(c)(1). A prisoner does not exhaust his administrative remedies when he fails to properly complete the grievance process or correct deficiencies in his grievances before filing a lawsuit. *See Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002). "An inmate who begins the grievance process but does not complete it is barred from pursuing a Section 1983 claim under the PLRA for failure to exhaust his administrative remedies." *Id.* Once the offender has exhausted all administrative remedies, he or she may then file a suit in federal court.

Defendants argue the Plaintiff concedes in his deposition that the grievance officer informed him he did not exhaust his administrative remedies as to his placement in segregation.[6] Plaintiff does not dispute this fact; however, he argues that he did, in fact, comply with the CDOC Grievance Procedure, but the CCA Defendants did not and, thus, remedies were unavailable to him.

The PLRA requires the exhaustion of "available" administrative remedies. *Jernigan*, 304 F.3d at 1032; 42 U.S.C. § 1997(e)(a) (requiring exhaustion of "such administrative remedies as are available"). Accordingly, "district courts are 'obligated to ensure that any defects in exhaustion were not procured from the action or inaction of prison officials' before dismissing a claim for failure to exhaust." *Little v. Jones*, 607 F.3d 1245, 1250 (10th Cir. 2010) (quoting *Aquilar-*

---

[6]All parties appear to agree that the grievance procedure was unavailable for Plaintiff's complaint concerning his transfer to CMRC.

*Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007)).  "Where prison officials prevent, thwart, or hinder a prisoner's efforts to avail himself of an administrative remedy, they render that remedy 'unavailable' and a court will excuse the prisoner's failure to exhaust.  *Id.* (citing *Lyon v. Vande Krol*, 305 F.3d 806, 808 (8th Cir. 2002) (en banc) ("[W]e have held that inmates cannot be held to the exhaustion requirement of the PLRA when prison officials have prevented them from exhausting their administrative remedies.")).

        In *Little*, the Tenth Circuit held that the state administrative reviewing authority ("ARA") exceeded its authority when it rejected the prisoner's appeal for "raising more than one issue" in contravention of the grievance procedure and, thus, excused the prisoner's failure to exhaust.  *Little*, 607 F.3d at 1250.  Here, AR 850-04(IV)(D)(6) provides that "[e]ach grievance shall address only one problem or complaint and include a description of the relief requested." Plaintiff contends that, if true that he improperly included more than one issue in his grievances, Defendants Cooper and Wilkinson, who responded to steps 1 and 2, should have notified him of such procedural deficiency in accordance with AR 850-04(IV)(C)(2), which provides, "If a grievance is procedurally deficient the offender shall be asked to cure any deficiencies and resubmit for processing." The Court agrees; to the extent that Plaintiff's step 1-3 grievances, which are substantially similar in content, can be read to include more than one issue, either Cooper or Wilkinson should have followed the regulation by notifying Plaintiff of such deficiency and asked him to resubmit the grievance for processing.

        However, the Court notes that Plaintiff's grievances also can be read to include only one complaint – his placement in segregation allegedly in retaliation for filing grievances.  Certainly, as evidenced by their responses, both Cooper and Wilkinson construed Plaintiff's grievances as asserting only one complaint.  *See* docket #212-23 at 8-9.  The applicable regulation also instructs

14

CDOC inmates "[p]roblems that arise from the same incident or set of facts shall be grieved in one grievance, even though it may involve multiple DOC employees, contract workers, or volunteers." AR 850-04(IV)(D)(6).  Plaintiff's grievances can be reasonably read to describe simply the set of facts surrounding his placement in segregation in accordance with the regulation.

Moreover, AR 850-04(IV)(D)(8) provides that the "duplicate [of] an issue previously grieved by that offender shall be accepted ... and forwarded to the appropriate party to be denied on procedural grounds."  In this case, the grievance officer alternatively rejected Plaintiff's step 3 grievance because it "involved the subject matter of previous grievances such as programming and time computation."  Docket #212-23 at 11.  However, while the officer acknowledged Plaintiff's complaint regarding "staff conduct," he mentioned nothing about such complaint being a "duplicate" of previous grievances. *Id.*  The regulation does not grant authority to the grievance officer to reject non-duplicative complaints.  Thus, the grievance officer in this case may have exceeded his authority. *See Little*, 607 F.3d at 1250.

Accordingly, the Court finds a reasonable juror could conclude the grievance officer improperly rejected Plaintiff's step 3 grievance and concluded he failed to exhaust administrative remedies.  Because the Plaintiff has raised a genuine issue of material fact as to whether prison staff interfered with his ability to exhaust administrative remedies, the Court recommends that the District Court deny Defendant's request for summary judgment based on a failure to exhaust.

## II.     Individual Liability for Constitutional Claims

Defendants contend that Plaintiff fails to demonstrate violations of the First and Fourteenth Amendments for his placement in segregation in February 2014 and his transfer to the CMRC in July 2014.

A.     <u>First Amendment Claims</u>

Plaintiff alleges that both actions (segregation and transfer) were prompted by his filing

grievances and submitting notices of intent to sue the CCA Defendants.

Plaintiff's claim is brought pursuant to 42 U.S.C. § 1983 alleging a First Amendment

violation against non-employer government personnel. The Tenth Circuit has adopted a three-part

test for such actions:

> Government retaliation against a plaintiff for exercising his or her First Amendment
> rights may be shown by proving the following elements: (1) that the plaintiff was
> engaged in constitutionally protected activity; (2) that the defendant's actions caused
> the plaintiff to suffer an injury that would chill a person of ordinary firmness from
> continuing to engage in that activity; and (3) that the defendant's adverse action was
> substantially motivated as a response to the plaintiff's exercise of constitutionally
> protected conduct.

*Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1203 (10th Cir. 2007) (citing *Worrell v. Henry*, 219

F.3d 1197, 1212 (10th Cir. 2000)).

1.     Protected Activity

The first element requires that the Plaintiff was engaged in constitutionally protected activity.

Defendants concede that "the filing of grievances and lawsuits are a constitutionally protected

activity." Motion, docket #184 at 9.  Moreover, Senior Judge Daniel has concluded that a "threat"

to file a grievance or lawsuit is protected.  *See Conkleton v. Muro*, No. 08-cv-02612-WYD-MEH,

2011 WL 1119869, at *3 (D. Colo. Mar.28, 2011) (finding that the "verbal articulation" of "an intent

to file [an inmate] grievance" is constitutionally protected speech).

Therefore, the Court finds that Plaintiff has met the first element to prove his First

Amendment claim.

2.     Adverse Action

Defendants contend their motion should be granted for Plaintiff's failure to establish an injury "that would chill a person of ordinary firmness from continuing to engage in the protected activity." *See Shero*, 510 F.3d at 1203.  They assert that three days in segregation[7] is insufficient to meet the second element of a First Amendment claim.

Whether Defendants' actions caused Plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in the protected activity requires an objective, not subjective, standard.  *See Eaton v. Meneley*, 379 F.3d 949, 954-55 (10th Cir. 2004) ("[T]he objective standard permits a plaintiff who perseveres despite governmental interference to bring suit."); *see also Smith v. Plati*, 258 F.3d 1167, 1177 (10th Cir. 2001) ("The focus, of course, is upon whether a *person of ordinary firmness* would be chilled, rather than whether the particular plaintiff is chilled.") (emphasis in original).

The Court notes that the evidence reflects Plaintiff continued to request and receive grievance forms while he was in segregation.  Chronlog Report, docket #184-2 at 22, 2/10/14 and 2/11/14 entries.  Nevertheless,

> "Speech can be chilled even when not completely silenced." *Rhodes v. Robinson*, 408 F.3d 559, 568 (9th Cir. 2005). "Because 'it would be unjust to allow a defendant to escape liability for a First Amendment violation merely because an unusually determined plaintiff persists in his protected activity,' the plaintiff "does not have to demonstrate that his speech was 'actually inhibited or suppressed.'" *Id.* (quotation omitted). The proper inquiry is "'whether an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities." *Id.*

*Rogers v. Garcia*, No. 08-cv-02821-WYD, 2010 WL 3547432, at *4 (D. Colo. Sept. 3, 2010).

---

[7]Defendants do not challenge whether the transfer to CMRC is an adverse action under the First Amendment.

Moreover, in *Rogers*, Senior Judge Daniel noted the Tenth Circuit's finding that a "threat" of long-term segregation was sufficient to chill a person from engaging in protected activity. *Id.* at *5 (citing *Fogle v. Pierson*, 435 F.3d 1252, 1263 (10th Cir. 2006)). Consequently, if a threat of segregation is actionable, so too must be the actual placement of an inmate in segregation. *See Denson v. Mayfield*, No. 09-cv-02087-WYD, 2012 WL 4356216, at *9 (D. Colo. Sept. 24, 2012) ("placement or continued placement in segregation would 'chill a person of ordinary firmness' from continuing to file complaints"); *Parker v. Ritter*, No. 08-cv-00737-MSK, 2010 WL 1286081, at *9 (D. Colo. Mar. 25, 2010) (" a threat of prolonged confinement to administrative segregation as punishment for filing lawsuits or grievances may still act to chill a person from engaging in these activities."); *Perrian v. Coons*, No. 13-cv-02951-KLM, 2015 WL 1539022, at*17 (D. Colo. Mar. 31, 2015) (allegations that defendant ordered charges to be filed, leading to segregation and loss of good time, were sufficient to state First Amendment claim).

      3.    Causation

With respect to the placement in segregation, Plaintiff brings his First Amendment retaliation claim against CCA Defendants Douglas, Wilkinson, and Frank in Claim One. Fourth Amended Complaint, docket #151 at 6-8. Defendants contend Plaintiff has failed to "establish[] that the adverse action was substantially motivated as a response to Plaintiff's exercise of constitutionally protected conduct." Motion, docket #184 at 9. The Court agrees with respect to Defendants Wilkinson and Frank; there is no evidence that these Defendants' conduct related to Plaintiff's placement in segregation was motivated by Plaintiff's grievances, particularly considering neither Defendant was mentioned in any grievances filed by the Plaintiff before he was placed in segregation. No reasonable juror could conclude that Defendant Frank or Wilkinson retaliated

against the Plaintiff in violation of the First Amendment for filing grievances by placing him in segregation on February 10, 2014 and, thus, the Court recommends that the District Court **grant** summary judgment in favor of these Defendants on Plaintiff's Claim One regarding his placement in segregation.

However, the Court disagrees as to Defendant Douglas and finds Plaintiff has demonstrated issues of fact as to whether she was motivated by his protected activity. It is undisputed that Plaintiff was placed in segregation following his submission of the February 7, 2014 kite to Douglas. The evidence reflects Douglas' note that she felt "concerned for her safety" by the kite and "wrote a statement requesting getting him off my caseload." Docket #184-2 at 23, 2/10/14 entry. Defendants do not dispute that the kite prompted Plaintiff's placement into segregation. Plaintiff counters, however, that the kite is not threatening, that Douglas' statement of concern for her safety is a pretext, and that Douglas was motivated by Plaintiff's stated intent to sue her, as well as the many grievances, including a January 29, 2014 intent to sue letter (docket #212-20), Plaintiff filed against her. Whether Douglas was motivated by concern for her safety or Plaintiff's threats to sue is a question of fact that must be determined by a jury; accordingly, the Court recommends that the District Court **deny** summary judgment as to Plaintiff's Claim One against Douglas.

With respect to Plaintiff's transfer to the CMRC in July 2014, Plaintiff alleges First Amendment retaliation against CCA Defendants Davis and Douglas in Claim Six. Fourth Amended Complaint, docket #151 at 13-15. Defendants contend that the "CCA Defendants had no authority to transfer Plaintiff or reclassify him" and, thus, they could not be motivated by Plaintiff's protected activity regarding his transfer. Motion, docket #184 at 9. Plaintiff counters that Davis and Douglas had the authority under CDOC regulations to issue a "discretionary override" on July 8, 2014

19

"assigning Plaintiff a higher custody contrary to the scored custody of Plaintiff," which resulted in his transfer to CMRC rather than ACC.  Response, docket #212 at 17; Fourth Amended Complaint, docket #151 at 13-14.  Plaintiff's arguments are not convincing.

First, the CDOC regulations provide for custody scoring to determine the security level needed for each inmate.  AR 600-01, docket #212-11.  Security levels range as follows: "close," "medium," "minimum restrictive," and "minimum."  *See* Trinidad Initial Custody Rating form, docket #212-12.  The evidence reflects that on August 16, 2013, prior to Plaintiff's transfer to KCCF, Plaintiff's custody score was designated as "close."  *Id.*  After his transfer to KCCF, Douglas completed an "initial custody rating" form on January 6, 2014 listing Plaintiff's "last" custody rating as "close" and recommending it be changed to "medium" for a "move to CMRC."  KCCF Initial Custody Rating form, docket #212-10.  The recommendation was approved by Barbara Reyman representing the reclassification committee.  *Id.*  The final note shows that Plaintiff's custody level was changed to "medium" but the request for transfer to CMRC was denied for "recent override from close. Retain at current facility for six months."  *Id.*

Plaintiff points to a subsequent "reclassification custody rating" performed by Davis on February 19, 2014 for which Davis listed Plaintiff's "last" custody score as "medium" and on April 1, 2014 recommended that it be reclassified to "minimum restrictive" for "a lateral move for TC programming."  KCCF Reclassification Custody Rating form, docket #212-13.  The recommendation was approved by Barbara Reyman representing the reclassification committee.  *Id.* The final note reflects what appears to be a reclassification to "minimum restrictive" (*id.*), and on April 7, 2014, the CDOC issued an Executive Assignment Order for Plaintiff's transfer to ACC (docket #212-25 at 11).  Nothing in the briefs nor in the evidence provided explains why this transfer

did not occur.

However, Plaintiff identifies as adverse the reclassification custody rating issued on July 8, 2014.  *See* CMRC Reclassification Custody Rating form, docket #212-25 at 22.  The form reflects the scoring was performed by Patricia Guerrero-Diaz at the CMRC; she listed Plaintiff's "last" custody level as "medium," recommended that it be reclassified to "minimum restrictive" and requested "movement consideration to CMRC per [Defendant] Bobby Mayes."  *Id.*  The recommendation was approved by Tracy Douglas representing the reclassification committee.  *Id.*  The final note, authorized by Defendant Phillip, designates Plaintiff's custody level as "medium" and approves the transfer to CMRC.  *Id.*  That same day, the CDOC issued an Executive Assignment Order for Plaintiff's transfer to CMRC, noting "for CMRC pre-release program per offender services."  Docket #212-25 at 23.

These documents, provided by the Plaintiff, show only that Douglas recommended and was approved for her request that Plaintiff's custody level be changed from "close" to "medium," and that Davis recommended and Douglas approved (on behalf of the committee) a request that Plaintiff's custody level be changed from "medium" to "minimum restrictive."  The Court cannot conclude these actions to be adverse under the First Amendment.  Moreover, there is *nothing* in the evidence demonstrating Douglas or Davis took any action to initiate Plaintiff's transfer to CMRC; although Douglas (on behalf of the committee) approved the request for transfer, the form reflects the request was made specifically by Defendant Mayes at the CDOC.  *See* docket #212-25 at 22.

Accordingly, because the Plaintiff has failed to demonstrate genuine issues of fact as to whether the CCA Defendants retaliated against him in violation of the First Amendment when he was transferred to the CMRC in July 2014, the Court recommends the District Court **grant** summary

judgment in favor of the CCA Defendants on Plaintiff's Claim Six.

     B.     <u>Fourteenth Amendment Claims</u>

The CCA Defendants contend that "Plaintiff's due process claim cannot survive because of the existence of the Eighth Amendment to vindicate any violation of his constitutional rights." Motion, docket #184 at 13. Plaintiff counters that, under governing law, he may bring both First Amendment and Fourteenth Amendment claims based on the same facts. Response, docket #212 at 23-24.

Plaintiff brings his Fourteenth Amendment[8] claims against CCA Defendants Douglas and Davis in Claim Seven, asserting they interfered with his liberty interest in attending the TC program, which would provide him 30-120 days earned time subtracted from his sentence upon completion, when they transferred him to CMRC rather than ACC. Fourth Amended Complaint, docket #151 at 16-17. The Court finds that Plaintiff did not possess a protected liberty interest in participating in the TC program.

This Court agrees with the opinion of Magistrate Judge Kathleen M. Tafoya who addressed this very issue in a recent decision:

> "Federal courts have consistently found that prisoners have no constitutionally protected liberty interest in prison vocational, rehabilitation, and educational programs based on the Fourteenth Amendment." *Washington v. Borejon*, 324 F.

---

[8]The Fourteenth Amendment provides as follows:

Section 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

App'x 741, 741 (10th Cir. 2009) ("The ability to participate in a rehabilitative prison program clearly does not implicate life or property interests."); *see also Grady v. Garcia*, No. 10-cv-00347-PAB-CBS, 2012 WL 1044491, at *8 (D. Colo. Mar. 27, 2012) (specifically finding that the plaintiff did not have a protected liberty interest in participating in the TC Program.).

*Cooper v. Ducharme*, No. 13-cv-01154-KMT , 2015 WL 1064180, at *10 (D. Colo. Mar. 9, 2015).

Even assuming that Plaintiff possessed a liberty interest in attending the TC program, the Court has already determined that the evidence demonstrates no genuine issue showing the CCA Defendants took an adverse action regarding Plaintiff's July 2014 transfer to CMRC.  Because the Plaintiff cannot demonstrate the CCA Defendants interfered with any life, liberty, or property interest as protected by the Fourteenth Amendment, the Court recommends that the District Court **grant** summary judgment in favor of the CCA Defendants on Plaintiff's Claim Seven.

## III.   Municipal Liability for Constitutional Claims

Plaintiff contends that he brings his constitutional claims against the CCA Defendants in both their individual *and* official capacities.  A private corporation and employees sued in their official capacities are liable under § 1983 only when an official policy or custom of the corporation causes or is the "moving force of the constitutional violation."  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *see also Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1216 (10th Cir. 2003) (traditional municipal liability principles apply to claims brought pursuant to 42 U.S.C. § 1983 against private corporations).  However, as the Court has determined that Plaintiff has not demonstrated constitutional violations by CCA Defendants Wilkinson and Frank in their individual capacities, the CCA cannot be held liable for an unconstitutional policy or custom.  *See, e.g., Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1317-18 (10th Cir. 2002) (declining to hold a municipality liable for an unconstitutional policy or custom "when there was no underlying constitutional

violation by any of its officers").

The Plaintiff has demonstrated genuine factual issues as to whether Douglas violated his First Amendment right against retaliation when he was placed in segregation. Thus, the CCA and Douglas in her official capacity would incur liability under § 1983 only if the harm had resulted from a policy or custom on the part of the corporation. *See Smedley v. Corrs. Corp. of Am.*, 175 F. App'x 943, 946 (10th Cir. 2005) ("in order to hold CCA liable for the alleged tortious acts of its agents, [the plaintiff] must show that CCA directly caused the constitutional violation by instituting an 'official municipal policy of some nature,' that was the 'direct cause' or 'moving force' behind the constitutional violations" (citations omitted)).

"To establish municipal liability, a plaintiff must show (1) the existence of a municipal custom or policy and (2) a direct and causal link between the custom or policy and the violation alleged." *Jenkins v. Wood*, 81 F.3d 988, 993-94 (10th Cir. 1996) (citation omitted).

> [I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.

*Board of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997) (emphasis in original). Notably, for his Claim One, Plaintiff alleges his First Amendment claim against the CCA Defendants "in their individual capacities" and makes no specific allegation concerning the alleged wrongful conduct of the CCA or its officials, in that he does not allege the CCA's responsibility arises from its implementation of a custom or policy that resulted in his injury. In the briefing, however, Plaintiff argues the Fourth Amended Complaint "adequately allege[s] and provide[s] evidence of a custom, policy, or practice ... by providing evidence of more than a single incident of

retaliatory act[s]." Response, docket #212 at 23. As set forth herein, the Court disagrees. Plaintiff also argues Douglas, in her capacities as case manager and classification committee "chair," had "the authority under state law to make final policy for CCA" as demonstrated by her "decision to place Plaintiff in disciplinary segregation." *Id.* Assuming without deciding that a decision to place an inmate in segregation is a "final CCA policy," while Plaintiff has raised genuine factual issues as to whether Douglas *instigated* his placement in segregation when she reported the kite and/or wrote a statement seeking to remove Plaintiff from her caseload, there is no evidence that Douglas made, or had the authority to make, the actual decision to place the Plaintiff in segregation. Accordingly, the Plaintiff fails to demonstrate that an official policy or custom of CCA was the "moving force" behind the alleged First Amendment violation by Douglas. Thus, the Plaintiff fails to state a § 1983 claim against the CCA or its officials, and the Court recommends that the District Court **grant** summary judgment in favor of the CCA Defendants on any municipal liability claims.

## IV.      Liability for State Law Claims

Defendants contend that the Court should decline to exercise jurisdiction to hear Plaintiff's state law claims "because Plaintiff's remaining claims arise under Colorado law and the state courts of Colorado possess greater familiarity with determining such claims than this Court." Motion, docket #184 at 16. Typically, "when all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims." *Smith v. City of Enid*, 149 F.3d 1151, 1156 (10th Cir. 1998) (citing 28 U.S.C. § 1367(c)(3)). Given this Court's recommendation to grant summary judgment in favor of CCA Defendants Wilkinson and Frank on Plaintiff's First and Fourteenth Amendment claims, the Court also recommends that the District Court decline to hear the state law claims Plaintiff alleges against them.

However, this Court does not recommend dismissal of the Plaintiff's Claim One (First Amendment) against Douglas, federal claims remain against the CCA Defendants, and the District Court may determine to exercise its supplemental jurisdiction.  Here, the CCA Defendants seek summary judgment in their favor on the Plaintiff's "negligence" claims.

In his Claims Two, Five and Eight, Plaintiff alleges negligence, negligent supervision, and negligence *per se*, respectively.  CCA Defendants argue "Plaintiff has failed to establish any breach of a duty by CCA Defendants or that he suffered any injury as a result of any alleged breach. No duty exists requiring Plaintiff to be housed in any particular unit or facility nor is there a duty to classify Plaintiff in any specific manner. Additionally, Plaintiff suffered no injuries that resulted from any alleged breach."  Motion, docket #184 at 16.  The Court will address each claim in turn.

A.    Negligence

The Colorado Supreme Court in *Keller v. Koca* set forth the legal standards for adjudicating a negligence claim:

> To establish a claim based on negligence, a plaintiff must show: (1) the existence of a legal duty to the plaintiff; (2) the defendant breached that duty; and (3) the breach of the duty caused the harm resulting in damages to the plaintiff.  A negligence claim fails where the law does not impose a duty on the defendant to act for the plaintiff's benefit. Whether a defendant in a particular negligence action owes a legal duty to the plaintiff is not a question of fact but is a question of law to be determined by the court.  After the court determines the existence of a legal duty, then the finder of fact is to determine whether the defendant breached that duty.

> Courts consider a number of factors to determine whether a duty exists, including: the risk involved, the foreseeability of the injury weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against injury or harm, and the consequences of placing the burden on the actor. No one factor is controlling, and the question of whether a duty should be imposed in a particular case is essentially one of fairness under contemporary standards – whether reasonable persons would recognize a duty and agree that it exists.

*Keller v. Koca*, 111 P.3d 445, 448-49 (Colo. 2005) (citations and quotation marks omitted).

Plaintiff's Claim Two alleges the CCA Defendants breached "a legally imposed duty" when they "disregarded Plaintiff's right and fundamental protections of the First Amendment" by "plac[ing] Plaintiff in disciplinary segregation on 2-10-14." Fourth Amended Complaint, docket #151.

This Court's investigation revealed no case law definitively concluding that prison officials have a duty under Colorado state law to refrain from violating a prisoner's First Amendment rights. However, Senior Judge Daniel has found that where a detention facility policy reinforces an inmate's basic rights under the First Amendment, "there may be a genuine issue of material fact as to whether Defendants breached a duty regarding Plaintiff's First Amendment rights." *Handy v. Cummings*, No. 11-cv-00581-WYD, 2014 WL 128001, at *3 (D. Colo. Jan. 14, 2014). Here, Plaintiff points to the CDOC's grievance procedure and KCCF's inmate handbook to demonstrate the facility's "reinforcement" of his First Amendment rights. Response, docket #212 at 26. CDOC AR 850-04(IV)(A)(3) provides, "Reprisals for the good faith use of or participation in the grievance procedure are prohibited." Docket # 212-24 at 2. Likewise, the KCCC Colorado Inmate Handbook provides, "Inmates shall not be subject to retaliation, reprisal, harassment or discipline for use or participation in the grievance procedure." Docket #212-25 at 30. Accordingly, in accordance with *Cummings* and absent any further explanation (other than conclusory statements) by the CCA Defendants, the Court must conclude that Plaintiff has demonstrated the existence of a legal duty by the CCA Defendants to refrain from retaliating against him for filing grievances.

However, the Plaintiff must also demonstrate genuine factual issues as to whether the CCA Defendants breached their duty. Based upon its finding herein, the Court concludes that Plaintiff demonstrates no factual questions as to whether Wilkinson and Frank retaliated against him when

27

he was placed in segregation.  The evidence reflects that Plaintiff neither filed any grievances against them nor even mentioned them in any grievance prior to his placement in segregation; thus, no facts exist demonstrating these Defendants may have breached a duty to refrain from retaliating against the Plaintiff.  Accordingly, the Court recommends that the District Court **grant** summary judgment in favor of Wilkinson and Frank on Plaintiff's Claim Two.

Regarding Douglas and as set forth above, the Court finds genuine issues of material fact exist as to whether she retaliated against the Plaintiff for his filing grievances against her.  Therefore, factual issues exist as to whether Douglas breached a duty to the Plaintiff, and the Court recommends that the District Court **deny** summary judgment on Plaintiff's Claim Two against Douglas.

B.     Negligent Supervision

"To prove negligent supervision under Colorado law, 'a plaintiff must prove (1) the defendant owed the plaintiff a legal duty to supervise others; (2) the defendant breached that duty; and (3) the breach of the duty caused the harm that resulted in damages to the plaintiff.'" *Cummings*, 2014 WL 128001 at *3 (citing *Settle v. Basinger*, No. 11 CV1342, 2013 WL 781110, at *3 (Colo. App. Feb. 28, 2013)).  For his Claim Five, Plaintiff alleges the "supervisory" CCA Defendants "knew of the misconduct [retaliation by placing him in segregation] and encouraged it."  Fourth Amended Complaint, docket #151 at 12.  However, the Plaintiff does not identify who breached a duty of supervision – he identifies Wilkinson as "Assistant Warden," Frank as a "Shift Commander," and Douglas as a "Case Manager," but the evidence does not reflect whether any of these Defendants had supervisory authority over any others and the Court will not assume as much.

However, even were the Court to assume Wilkinson, as Assistant Warden, had supervisory

28

authority over Douglas, nothing in the evidence presented demonstrates his participation in the Plaintiff's placement in segregation; rather, Wilkinson later responded to Plaintiff's grievance regarding segregation, but there is nothing demonstrating a factual issue as to whether Wilkinson knew Douglas reported the kite and/or wrote a statement in retaliation for Plaintiff's filing grievances against her.

Accordingly, the Court recommends that the District Court **grant** summary judgment in favor of the CCA Defendants on Plaintiff's Claim Five for negligent supervision.

C.      Negligence Per Se

"The elements for negligence per se are a statute or ordinance that defines the standard of care, the plaintiff is a member of the class intended to be protected by the statute or ordinance, and the injuries suffered were the type the statute or ordinance was enacted to prevent." *Cummings*, 2014 WL 128001 at *3 (citing *Lui v. Barnhart*, 987 P.2d 942, 946 (Colo. App. 1999)). "The underlying principle of the common law doctrine of negligence per se is that legislative enactments such as statutes and ordinances can prescribe the standard of conduct of a reasonable person such that a violation of the legislative enactment constitutes negligence." *Id.* (citing *Lombard v. Colo. Outdoor Educ. Ctr., Inc.*, 187 P.3d 565, 573 (Colo. 2008).

For the same reasons set forth in section IV.A., the Court recommends that the District Court **grant** summary judgment in favor of Wilkinson and Frank and **deny** summary judgment in favor of Douglas on Plaintiff's Claim Eight for negligence per se.

**CONCLUSION**

Accordingly, for the reasons stated above and based on the entire record herein, the Court respectfully RECOMMENDS that the Motion for Summary Judgment from CCA Defendants

[identified as Douglas, Wilkinson, and Frank] [filed August 31, 2015; docket #184] be **granted in part and denied in part** as follows:

A.     For Claim One, grant summary judgment in favor of Wilkinson and Frank in both capacities and in favor of Douglas in her official capacity, but deny summary judgment for Douglas in her individual capacity;

B.     For Claims Two and Eight, grant summary judgment in favor of Wilkinson and Frank, but deny summary judgment for Douglas; and

B.     For Claims Five, Six, and Seven, grant summary judgment in favor of Wilkinson, Frank, and Douglas.

Dated at Denver, Colorado, this 5th day of January, 2016.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge